Good morning everyone. The first case this morning is number 141347 United Access Technologies against CenturyTel Broadband Services. Mr. Garza. May it please the court. In light of the general non-infringement verdict in Earthlink, collateral estoppel cannot apply here. The jury in Earthlink found only that Earthlink did not directly infringe the patent. The jury could have reached that verdict even if the accused system did not infringe. As a result, the jury did not need to determine whether any ADSL system infringed. As a result, collateral estoppel on that basis is inappropriate. We start with the jury verdict. The verdict made one finding on infringement, that Earthlink did not directly infringe the patent. Now, here's the point that may not be intuitive. The jury could have reached that verdict whether or not the accused system infringed. That's to say, the jury could have found that Earthlink did not directly infringe even if the jury found that the accused system did infringe. In the theory that Earthlink did use the accused system. Exactly. Because of the telephone problem. Yes, because of the telephone problem, but it's unclear whether it's because of the telephone problem or not. I understand that, but that would be, hypothetically, that would be a ground on which one would suspect the jury may have concluded, if it did, that there was no use. Correct. That was essentially the argument you presented to the jury on that branch of your non-infringement argument. Correct. Let me ask you this. The argument you're making now, was that presented at any point in the form that you're making it to the district court? Yes, Your Honor. Where was it? In our brief, first we identified the use argument from the district court that Earthlink made. Then we noted that the accused system was not determined by the jury to be non-infringing. And third, we noted the indirect infringement argument, which is essentially the same argument. You can't resolve a direct non-infringement verdict with an indirect infringement verdict. Well, I guess what I'm asking is, did you explicitly make the argument to the district judge that this is a general verdict, and therefore one cannot know which of the several possible grounds that the jury settled on as a basis for finding non-infringement, and therefore collateral estoppel does not apply? Did you make that argument in that form, which is your argument now? Well, in those exact words, no. Well, in terms of that effect. In other words, did you put the district court on – did you give the district court the gist of the argument, put the district court on notice that that was the position you were taking legally? Because your opposing counsels say you've waived this whole argument. And I want you to point me to where in your brief you make either that argument in – if not in haec verba, then at least in spirit. Well, again – In your district court brief. Yes. In the district court, we explicitly said the jury did not find that the accused system infringed the patent. And we made that after noting the use argument in the district court, after quoting the transcript. If you want to – I know that page site is in my reply brief, so let me turn to it. So at page 8 – A872 of the trial transcript, we wrote, the jury found consistent with the court's instructions that Earthling did not infringe any claims of the accused patent. A872. I'm sorry. A872? Yes, sir. And we also wrote, contrary to Earthling's suggestion, the jury did not find that industry standard ADSL failed to infringe the asserted patent. We made this distinction between the system infringing the patent and Earthling directly infringing the patent in that sentence. And further, again, on page A884, that's where we make this indirect infringement, direct infringement distinction, which is another flavor of the use argument. Again, the only way to resolve a direct and indirect infringement verdict, where there's non-infringement on direct infringement and infringement on indirect infringement, is to find that Earthling didn't use the system. So these are all the same arguments. There's one argument here on the necessary prong, and it was raised by the Supreme Court. Along those same lines, the Trump court seemed to believe that the Gene Alexander case was controlling and that as long as there were alternative grounds, did you argue that this was not a situation in which that case would control? Because it was kind of surprising that the trial court didn't sight-touch alternative cases or other cases and discuss the extent to which this general verdict issue might be impacted or might impact which cases would apply. We argued to the district court that the jury did not find that the system infringed. And not whether or not a ground was necessary to that verdict. What I believe the district court did was look straight to the Jamal opinion and look at what it considered to be alternative grounds in basing its judgment. That was erroneous, because the Jamal opinion only identified what could have supported the verdict and not what necessarily supported the verdict. There's a big difference there. What could have supported the verdict is speculation. What necessarily supported the verdict is fact. And there aren't any cases that allow you to transform what could have supported the verdict as identified in the Jamal opinion into a necessary predicate for the verdict sufficient for collateral estoppel. Well, to get to the substance and recognizing that you would have to have direct infringement somewheres for indirect infringement, could you summarize what the differences are setting aside the telephone between these systems? The record says that this was a dominating concern of the district court and that there was a substantial exchange and the conclusion was more likely than not that they're the same. Is that inaccurate? We believe so, Your Honor. The biggest difference between the two cases is how the defendants used the technology. Again, Earthlink does not provide telephone services and CenturyTel does. You would expect a jury to find this use question differently between the two companies. From a system standpoint, there's just not evidence in the record to say how the systems are different. I've looked at the appellate record for differences or how they're identical. The telephone filters, the telephone exchange, and the signal interface. And CenturyTel has not cited to evidence showing that the systems are materially identical as is required for collateral estoppel. Well, if the systems are the same, why would it control that there was a general verdict rather than specific questions as to what the reasoning was? If CenturyTel had proven that the systems were the same, the general verdict still would not control because the jury could have found for Earthlink on the use question. Again, to show direct infringement, it's not enough to say that the accused system infringes. You have to tie it to the defendant. The defendant has to either make, use, sell, offer to sell, or import the system. Here, because the accused technology involves infrastructure, telephone exchanges, and telephone wiring networks, the plaintiff had to show use for bail on direct infringement. Earthlink contested that it used the system, and its argument was that we don't use telephone services, and the claimed systems require telephone services. You can't use the claimed systems if you don't use telephone services and telephone devices. There's a telephone exchange that connects to telephone devices. There's telephone filters that connect to telephone devices. If the jury credited Earthlink's argument, the jury could have found for Earthlink whether or not the system infringed, even if the systems were identical. I think the confusion here is you keep referring to the accused system. Your argument is that the standard, that any use of the standard would infringe, right? That was your initial argument. Is that right? No, that was not our initial argument. Our We did not argue to the jury that a specific standard controlled the case. There are references to standards that I believe are of the type of, this is the usual way that people do things, but that sort of testimony is not sufficient to establish collateral estoppel. You have to show that the systems are materially identical to the claim limitations at issue. Unless there are further questions from the panel, I'd like to save my remaining time for rebuttal. All right. We'll save the rest of your time, Mr. Garza, for rebuttal. Let's hear from Mr. Gardek. Good morning, and may it please the Court. I'm Matt Goday here on behalf of the Appalachian SentryTel Inquest. I want to start with respect to, there were a few different waiver issues here. The first one I want to start with goes to the first set of questions with respect to did they even raise this argument that, separate and apart from the telephone issue, there might have been something else that the jury had in mind. And the answer to that is they did not. That the citations they referred to in their reply brief, and what they just pointed to, and it's actually quoted in the record, was actually the background fact section where they just said Earthlink argued they didn't use telephones. It was all about telephones, and the argument in the district court by United Access, it didn't even use the right standard for collateral estoppel. Their argument was that collateral estoppel only applies if the systems in totality are substantially the same, such that their argument went, if the telephones exist, there's no collateral estoppel. They were actually citing the standard for claim preclusion instead of issue preclusion, and they didn't make anything at all in the way of an argument on issue preclusion. Well, before we get putting aside the waiver for a minute, let's try to decide what the law really is. I mean, the Gene Alexander case seems to be a fact pattern that's not really consistent with what we have here. I mean, at least in the Gene Alexander case, there were clear alternative holdings. In other words, we find on this ground, and we find on that ground. So isn't it true that given a general verdict, we have to decide whether or not it's clear that they had to have found on a particular ground for Gene Alexander to apply? That's not exactly the standard, Your Honor. The standard is laid out in the Bradburn parent-teacher store case, which we cite in our brief. That's the Eastern District of Pennsylvania case. That case, in turn, cites four different federal court of appeals cases, two from the 10th, one from the 9th, one from the 7th. In all of those cases, the courts look behind general verdicts, and the question is, what are the inferences that are necessary from the verdict? And as the Bradburn case says, this is its language, as a practical matter, that means what inferences were necessary to support the verdict? That is precisely the question that the judge in the Earthlink case already answered, and I'll turn to that once more. Well, sure. You can have a general verdict from which you can say with great confidence in some cases, and with considerable confidence in others, and with less confidence in still others, as to what the jury must have concluded. The question is, if you have a situation in which the jury could have reasonably reached its conclusion on one of two different grounds, it seems to me, as Judge O'Malley was suggesting, that that's very different from a situation such as presented by Gene Alexander Cosmetics, in which you know that you have two different grounds of decision. You don't know that in a general verdict situation where the jury could have said either A or B. Would you agree with that characterization? Your Honor, I don't. Where was I wrong in what I just said? The reason is, when you look at what the Earthlink court actually did in reviewing the verdict… I'm talking more generally about the legal principle that I and Judge O'Malley basically… Absolutely. What's wrong with that legal principle? What's wrong with it is that when the jury verdict is reviewed, the court didn't determine that the jury could have done something. Based on the standard the Supreme Court laid out for a JMAL review, the court must infer that the jury was required… the court was required to infer that the jury did not believe evidence that it was entitled to discredit, and that's what I was going to point you to. That is precisely the standard in the Earthlink JMAL opinion that says, quoting the Rees v. Sanderson case, this is an A664 in the record, it says… Before you get… let's make sure we're all on the same page here with respect to the underlying legal principle. Set aside this case for a moment. The proposition that I was trying to see if you would agree with is, if I have a jury verdict in which I do not know which of two different grounds the jury may have decided on, that is not the same, I submit to you, as a situation in which you have two alternative grounds that you know were grounds of decision, correct? Your Honor, those are two different situations. Legally they are the same is what I'm saying. Why? Legally they are the same because when the judge reviews the general verdict, the judge must, must conclude that anything… you resolve inferences in favor of the winning party against the losing party, and the language from the Supreme Court is that you must infer that anything the jury could have disbelieved, for example, in Peach's testimony, was disbelieved. And so it's not… while it's true that we don't know what the jury… we never know what the jury would say. And if that were the case… Now you're getting into the general verdict law. Assuming all inferences are in favor of the party who prevailed, the question is whether or not any alternative ground could have been reasonably reached. So all the trial court did in denying Jamal was to say, well, there are alternative ways in which the jury could have gotten to this point. And again, that doesn't decide that they did get there both ways. On the one hand, that's true. On the other hand, that is exactly what the standard in Bradburn is, though. It's that you look to determine what inferences as a practical matter are necessary to support the verdict, which is exactly what the Jamal standard is. You look at the verdict and say, well, what inferences do I have to draw in order to support this? And in this instance, if the Jamal order had stopped at page A667 about two-thirds of the way down, there wouldn't be any issue at all because at that point all you've got is the inferences there with complete failure proof. We've got a waiver that the systems are completely identical as in the telephone systems. That would be the end of the inquiry. But the only difference between this case and Bradburn and the Ag Services case and the Butler case and the Ohio Sealy case is that the district court went on and said there is an additional basis in which I must infer that there also were not telephones. But that's it. So the question is, and essentially then using the Bradburn words, what does necessary mean? I mean when we say necessarily implied, does necessary mean we are certain the jury actually thought this? Or does necessary mean something else? And this is where Gene Alexander answers the question directly. That is exactly – Well, Gene Alexander wasn't a jury. It wasn't a jury case. It was a necessary case. In other words, we already – we don't – That's – the gap is between a general jury verdict and necessity. That's – for me at least, that's the hole in your case. So saying that, well, it was a necessity case, that doesn't solve the problem of the hole. Your Honor, the – in sort of working through the chain of it, if – we would never actually know what a jury is saying. So it's always by definition you are looking through the reasonable inferences to determine what is necessary. And then the question is basically if there are two of them here, does that mean that this is no longer in the pattern of Bradburn or ag services? And that is the issue that Gene Alexander goes to is if there are alternative independently sufficient bases, then they are both necessary. And so that's the language. And the fact pattern in Gene Alexander unquestionably is coming from a bench trial where it's actually written out. But nothing about that logic – And where they said both – where they actually made both independent findings and they said either are sufficient to sustain this judgment. That's not what we – and in fact, even accepting your proposition that we could just look at the first part of the JMAW, all the court said in that JMAW was that the jury could have found the plaintiff's expert not credible, which means the jury could have found that they didn't sufficiently prove that that particular system infringed. That's not the same as finding that the jury reached the conclusion that it did not infringe. And I want to talk about that point because that proposition is what is answered by Bradburn and ag services and Butler. The same thing could be said of each of those cases. In other words, we don't know what the jury actually found. We're drawing inferences. That could language, it doesn't mean that the judge wasn't drawing the inference. That's again the standard, the Supreme Court standard that the Earthlink judge quoted before getting into that, which says the court must draw the inference and must conclude that the jury disbelieved or discredited any testimony it could discredit. So when you then turn the case – A verdict. That's a very different inquiry from deciding what it was as a matter of fact that the jury actually did, something that you can infer in some cases where there was only one issue, let's say. The jury must have, must have acted wholly irrationally, must have reached that one issue. But that is not the case if you have multiple different grounds on which the jury could have reached the conclusion it did. You can and indeed must sustain the jury verdict if any of those grounds is factually sufficient. That seems to me a very different question from saying that each of those grounds is independently sufficient to give you the confidence in the fact that the jury based its verdict on that ground to proceed to collateral estoppel. Your Honor, I think that the answer to that is the standard, the JAMAL standard is essentially the same as the – the Bradburn standard is what are the inferences necessary to support the verdict. That is the same test that's being used in a JAMAL review. And likewise, the logic is the same. I mean on appeal, if they couldn't reverse either of those points, they would lose just as if it had been a bench trial that wrote it out. And as Gina Alexander says, there's no reason to give a second bite at the apple. And in fact, Gina Alexander errs on the side of not giving a second bite at the apple because again, in this instance, it would be a curious result that they're better off for having lost on two issues than just one issue. That's exactly – that's exactly the Gina Alexander analysis, is it can't be that if the opinion had stopped here, you would have lost. But because the opinion keeps on going and has a second basis, although you lost that case and they both fully counted against you in that case, you're now free to sue somebody new. And for example, in this case, it's literally the same telephone line. That Quest Corporation, one of the Applees, was one of the resellers to Earthlink. So some of the Earthlink ADSL lines at issue, and this is reported in one of the decisions in the prior case that's in the record at A418, it's literally the same line. And that's what Gina Alexander is saying, that we understand it's not perfect. But given that there is clear authority to infer – to determine what inferences are necessary for a verdict. And we've got a complete waiver as to there being any differences. We're going all around this a good deal of what you're saying. It seems to me it supports their position of no estoppel. Is your position, after all, that it doesn't matter which ground the jury relied on if the products are not shown to be significantly different from the viewpoint of the patent? That seems to me that that's what the district judge was thinking about. That's correct, that it was established that there are no differences between the two products other than this telephone issue. That's the only thing that they held out was the telephone issue. And they did nothing – they made no argument of any sort to the district court. But is your argument, then, that it doesn't matter in this scholarly discussion as to the – exactly what's involved in estoppel under different conditions? Your Honor, because of the overall waiver, that none of these arguments were made in the district court. Assume that there's no waiver. Okay. Assume that we want to hear the merits in any case. Okay. The argument is that the only possible distinction that they could make is on the basis of the telephone. And that was a second, as it was presented, independently sufficient basis for the judgment. That the first basis by itself, if that was all that was in the opinion. And that was just the difference between direct and indirect infringement. I still am not sure that I hear your saying that we don't have to decide which of these two grounds the jury relied on because I thought that was what the district judge said. Your Honor, the district judge said that under Gene Alexander, it doesn't matter which of the two grounds. They both fully count. I don't seem to care for the Alexander case. Your Honor, I do. I think Gene Alexander absolutely controls this decision. And although it came up in a different factual pattern, the rationale of Gene Alexander and, in fact, the rule. It defines what it means to be necessary. The rule controls here. And so we know what the factual inferences are because they were set forth in the JAMAL order. The only issue is that we've got two sets of factual inferences that the district court was required to draw rather than one. But even the Braverton case said the question is whether, based on their inferences, the jury must have relied on a particular theory to uphold the judgment. And so my problem here is I don't understand if there is the alternative argument regarding the telephone line that we need to conclude that the jury must have found that the standard didn't infringe. Your Honor, I agree that is the crucial point, but that's not what the Bradburn case said. The language was, quote, as a practical matter, what inferences are necessary to support the verdict? And then it says, inferences are necessarily implied by a prior verdict if they are, as a practical matter, necessary to support that verdict, and a rational jury thus must have made such findings. Correct, and that is precisely what the JAMAL standard is, that because the jury could have disbelieved this, that's the only way to get to this result. Let me ask you, as a practical matter, in the jury room, do you think it's factually impossible or highly improbable, let's say, that the jury might have said, you know what, there are no telephones in the defendant's system. Therefore, we don't have to get into this whole question of whether ABSL infringes or not. Could the jury have come to the conclusion that there's no infringement based on that reasoning? Your Honor, we don't know what the jury did. I'm asking you, would the record have supported such a conclusion that one could say the jury might have reached that conclusion? Certainly the district court in that case seemed to think that was the basis on which the jury could have found non-infringement. Would you agree? That is correct. And you don't take issue with that? I don't, but it's the next step that's so important, which is that the jury, the judge, and this is again at A664, is required to draw the inference that therefore the jury did reject the testimony and did find that the telephones were not… Even though, as a matter of fact, the jury may never have reached the second question and may have decided entirely based on the telephone, something the judge thought was quite possible. That nonetheless, as a legal matter, you have to treat the jury's verdict as if it decided all the questions on which it might have reached the verdict of non-infringement. That's your position, right? Your Honor, that is our position based on, for example, the Reeves v. Sanderson case. And at the end of the day, there is no difference from the Gene Alexander standpoint about this question of necessity because, again, if the opinion had stopped at 667A three-quarters of the way down, there's no issue at all. It's that it went on to say an additional basis, an additional set of inferences I must draw are that, and then it went on to say, to explain what those were, Your Honor. All right. Let's hear from the other side. Thank you, Mr. Gaudet. Thank you. Mr. Beresford. I'd like to respond briefly to three points. First, appellees cite the Bradburn case as providing the proper standard here. But the Bradford case and Bradburn case only found that as a matter of antitrust law, a jury verdict on monopoly necessarily implied the power to control prices. Now, this, of course, isn't an antitrust case. This is a patent case. As a matter of patent law, to show direct infringement, you have to show two things. You have to show the threshold question of use, sale, offer to sale, and then that the accused system infringed the patent. As a matter of patent law, Bradburn does not apply. Instead, you have to look at the law of how you can determine what was necessary to a general jury verdict. There's multiple circuit law cases governing this. Second Circuit, Federal Circuit, and Novartis, the Ninth Circuit in Chu. And if we're looking at district court authority, the Eastern District of Pennsylvania found this in the Amater case. So the standard of review is not Bradburn. The standard of review is embodied in this court's decision in Novartis that you can't look behind a general defense verdict. Second, appellees admitted that... Can I ask you a question? Why is it that you didn't cite any of those cases that you just listed as multiple cases that apply to this proposition? Why is it that you didn't cite those to the district court in your opposition to their motion for summary judgment slash judgment on the pleadings? I don't know why these precise cases weren't cited to the district court. But the argument's there, and the argument still applies and stands. It is more fully supported with the case sites we provided to the appellate court. But we did provide this argument to the district court. Well, if the argument is there, it's a little hard to extract, frankly. It's not there in nice, clear, crystal teed-up form for the district judge. I mean, I've read your brief in opposition, and there are a few snippets here and there that you could say, well, yeah, that sort of alludes to the argument. But the argument you're making now, I don't think the district court would recognize as having been made to him. Well, again, at the district court, we did argue the same prong of collateral estoppel. It was necessary to a final judgment. And we did make this argument that the accused system was not necessarily found to infringe. And this indirect infringement argument is the same argument. Again, to uphold an indirect infringement verdict while the direct infringement was found not to infringe, the only way to do that is to find that Earthling didn't use the system. Otherwise, if you have an indirect infringement verdict that infringes, you must find that the system infringes. That's the only way the indirect infringement verdict would work. By raising that argument in the district court, it is the use argument. It's all the same argument attacked from different angles. And although we may not have presented this argument that we're presenting here in the exact same form, it's the same argument. I mean, I'm just looking at this from the standpoint of the district court judge. And, you know, we have an adversary system. I'm looking at your brief in opposition, and you cite Gene Alexander as a controlling case. Gene Alexander is certainly a controlling case. Gene Alexander is Third Circuit law. And Gene Alexander applies in certain circumstances. And this verdict form actually shows an excellent example of how it could apply. There's one question in the jury verdict form on infringement, and there are four questions on invalidity. If the invalidity findings had not been overturned on Jay Mall, under Gene Alexander, each of those four findings would be given equal weight on collateral estoppel. The reason Gene Alexander doesn't apply to the infringement side is there is only one finding. And the question isn't whether we give that finding collateral estoppel effect. We do. The question is what was necessary to that finding as a matter of general jury verdict law. So we're not fighting Gene Alexander. We agree that it is good law in the Third Circuit. It just doesn't apply to the fact pattern at bar. Any more questions? Okay. Thank you, Mr. Garrison. Thank you, Mr. Bourdais. The case is taken under submission.